UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AMER FAROUQ ADIB KAMAL | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 07 C 4840 |
| v. | ) | |
| | ) | |
| MICHAEL B. MUKASEY, Attorney General | ) | Judge Aspen |
| of the United States, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

**Introduction**

The defendants have moved to dismiss Amer Kamal's complaint seeking

mandamus relief for lack of subject-matter jurisdiction and failure to state a claim. The

court should deny this motion. The jurisdiction-stripping provision cited by the

government, 8 U.S.C. § 1252(a)(2)(B), is inapplicable to this case because it says nothing

about removing the federal courts' ability to review the pace at which the government

adjudicates applications for adjustment of status. This statute only prevents the courts

from reviewing "decisions or actions" of the Attorney General or the Department of

Homeland Security (DHS). However, in this case, it is precisely the lack of any such

decision or action that Mr. Kamal is asking the court to remedy.

In addition, contrary to the government's assertion, the Seventh Circuit's decision

in *Iddir v. INS*, 301 F.3d 492 (7th Cir. 2002) does not require that Mr. Kamal's complaint

be dismissed. Although that case indicates that the decision to grant or deny adjustment

of status is discretionary, it does not hold that the pace of adjudication is discretionary.

The decision in *Iddir* actually supports Mr. Kamal's position, as it expressly establishes

that the government has a non-discretionary duty to adjudicate applications for

adjustment of status. *Id*. at 500. Furthermore, the lack of a specific deadline in the

statute governing adjustment of status, 8 U.S.C. § 1255, does not mean that the

government has the discretion to delay adjudication of Mr. Kamal's application without

justification indefinitely. The Administrative Procedure Act requires government

agencies to adjudicate matters presented to them within a reasonable time. Any other

rule would strip the government's duty to adjudicate administrative filings based on

Congressional mandates of any meaning.

Finally, the government's vague assertion that national security concerns make

the delay in Mr. Kamal's case reasonable is insufficient to defeat his mandamus claim at

this early stage of the litigation.


## Background

Mr. Kamal, a citizen of Jordan, filed an application for adjustment of status over

five years ago in August 2002. His wife, who is a United States citizen, simultaneously

filed an I-130 petition on his behalf. Although Mr. Kamal was interviewed on his

application in December 2002, he has yet to receive a decision. Mr. Kamal has been

inquiring about the status of his application since July 2003 and has been informed that

his application has not been decided because FBI background checks are still pending.

The government's attorney in this matter recently indicated that Mr. Kamal's background

check had come back from the FBI. However Mr. Kamal has still not received a

decision.  Mr. Kamal brings this present lawsuit seeking relief under the Mandamus Act, 28 U.S.C. § 1361.  He asks the court to compel the government to make a decision on his application for adjustment of status.  The court's jurisdiction is also founded on the Administrative Procedure Act, 5 U.S.C. §§ 555, 706, which permits a court to order a federal agency to take action that is unreasonably delayed.

## Argument

### I. 8 U.S.C. § 1252(a)(2)(B) does not apply to Mr. Kamal's case because he is not challenging a judgment, decision, or action by the government.

The government argues that 8 U.S.C. § 1252(a)(2)(B) bars the court from considering Mr. Kamal's claim.  Defendants' Motion to Dismiss at 4.  In particular the government points to language in the statute stating that courts shall not have jurisdiction to review "any judgment regarding the granting of [adjustment of status]" or "any other decision or action . . . which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security . . . ."  8 U.S.C. § 1252(a)(2)(B).  However, as this language makes clear, 8 U.S.C. § 1252(a)(2)(B) applies only to judgments, decisions, or actions.  Mr. Kamal is not asking the court to review the government's judgment, decision, or action on his application for adjustment of status. He is asking the court to compel the government to make a judgment or decision in the first instance.

The government argues that the word "action" in the statute includes all acts leading up to the final decision to grant or deny adjustment of status.  The pace of adjudication, it asserts, is one of the acts leading up to the final decision.  Therefore, according to the government, courts are barred from reviewing the pace at which the

government adjudicates applications for adjustment of status. The government is correct that some district courts have accepted this argument. *See*, *e.g.*, *Sharif v. Chertoff*, No. 07 C 1690, 2007 U.S. Dist. LEXIS 51701, at 10-11 (N.D. Ill. July 18, 2007)[1]; *Safadi v. Howard*, 466 F. Supp.2d 696, 699 (E.D. Va. 2006). But at least an equal number of district courts have rejected this position and have concluded that government inaction in processing an application cannot be deemed an "action." *See Khelashvili v. Cholokava*, No. 07 C 2826, 2007 U.S. Dist. LEXIS 89718, at *8-9 (N.D. Ill. Dec. 6, 2007); *Saleem v. Keisler*, No. 06 C 712, 2007 U.S. Dist. LEXIS 80044, at *10-11 (W.D. Wis. Oct. 26, 2007); *Zaigang Liu v. Novak*, No. 07-263, 2007 U.S. Dist. LEXIS 63683, at *13-14 (D.D.C. Aug. 30, 2007); *Yufeng Liu v. Chertoff*, No. CV-06-1682-ST, 2007 U.S. Dist. LEXIS 65687, at *21 (D. Ore. Aug. 29, 2007); *Paunescu v. INS*, 76 F. Supp.2d 896, 900 (N.D. Ill. 1999). Most importantly, the government ignores the fact that this position has been rejected by the Seventh Circuit. In a similar case involving a failure by the government to promptly adjudicate an application for adjustment of status, the Seventh Circuit decided that § 1252(a)(2)(B) "by its use of the terms 'judgment' and 'decision or action,' only bars review of actual discretionary decisions to grant or deny relief under the enumerated sections . . . ." *Iddir*, 301 F.3d at 497.

Mr. Kamal submits that these cases take the more rational position. Even if the term "action" includes interlocutory decisions leading up to the government's final decision, Mr. Kamal is not challenging an interlocutory decision in any normal sense.

---

[1] Although *Sharif* arose in the Northern District of Illinois, it did not involve an application for adjustment of status under 8 U.S.C. § 1255 and does not discuss the ruling of the Seventh Circuit in *Iddir v. INS*, 301 F.3d 492 (7th Cir. 2002), that the defendants have a non-discretionary duty to adjudicate such applications within a reasonable period. *See* discussion *infra* at 7-8.

For example, he is not challenging the decision by the government to conduct a background check or to investigate a particular lead; he is simply challenging the failure of the process to come to a conclusion. *See Saleem*, 2007 U.S. Dist. LEXIS 80044, at 10-11. Furthermore, a conclusion that § 1252(a)(2)(B) bars courts from reviewing the pace of adjudication would leave people in Mr. Kamal's situation with no remedy whatsoever. If Mr. Kamal had received a denial of his application for adjustment of status he could have at least pursued administrative remedies even if § 1252 prevented him from making subsequent appeals to the federal courts. There is a presumption in favor of judicial review of administrative action, therefore Congress must have clearly and convincingly indicated its intent to limit federal jurisdiction for jurisdiction to be barred by statute. *See Iddir*, 301 F.3d at 496; *Saleem*, 2007 U.S. Dist. LEXIS 80044, at * 12. There is nothing in § 1252 to suggest that Congress also intended the harsh result of eliminating any form of relief for people in Mr. Kamal's situation.

For these reasons the court should find that it has jurisdiction over Mr. Kamal's claim and should deny the government's motion to dismiss under Federal Rule of Civil Procedure 12(b)(1).

## II. Mr. Kamal has adequately stated a claim under the Mandamus Act

To succeed in his claim under the Mandamus Act, Mr. Kamal must establish the following: 1) he has a clear right to the relief sought; 2) the government has a duty to perform the act in question; and 3) no other remedy is available. *Iddir*, 301 F.3d at 499. The government focuses on the first two of these elements, arguing that Mr. Kamal has not adequately alleged that he has a right to an order compelling adjudication of his

application because the government has no duty to adjudicate that application. The government asserts that the pace of adjudication and even whether the government adjudicates an application at all have been committed to its discretion. However, the law establishes that the government has a duty not only to adjudicate applications for adjustment of status, but to adjudicate them within a reasonable time.

**A. The government has a non-discretionary duty to adjudicate applications for adjustment of status.**

Although the statue governing adjustment of status makes the decision about whether to grant or deny adjustment of status discretionary, *see* 8 U.S.C. § 1255(a)("the status of an alien . . . may be adjusted by the Attorney General, in his discretion . . ."), it does not give the agency discretion about whether to adjudicate an application at all. The government's duty to make some kind of decision is clear. The corresponding regulations to § 1255 state that "[t]he applicant shall be notified of the decision of the director and, if the application is denied, the reasons for the denial." 8 C.F.R. § 245.2(a)(5). Unlike the statute, which uses non-mandatory language such as "may" when describing the Attorney General's power to determine the ultimate result of an adjustment application, the regulation, which deals with the Attorney General's obligation to issue a decision, uses the mandatory term "shall." *See*, *e.g.*, *Saleem*, 2007 U.S. Dist. LEXIS 80044, at \*16-17 (relying on this provision to find that the government has a duty to adjudicate applications for adjustment of status); *Yaoming Liu v. Chertoff*, No. 07 C 388, at 4 (N.D. Ill Oct. 5, 2007) (same). The government in its motion chooses to focus on the non-mandatory language relating to the decision whether to grant or deny an application and ignore the mandatory language relating to the obligation to adjudicate the application and make a decision of some kind. Defendants' Motion to Dismiss at 7-9.

This error also causes the government to misread the Seventh Circuit's decision in *Iddir*. The government claims that *Iddir* clearly establishes that the pace at which it adjudicates an application for adjustment of status, and indeed whether it adjudicates these applications at all, is discretionary. Defendants' Motion to Dismiss at 7-9. The government appears to be referring to the following statement in *Iddir*: "The term 'shall' denotes a clear directive, a command, as opposed to the terms 'may' or 'in his discretion' used in a statute such as 8 U.S.C. § 1255(a)." *Id*. at 499. This sentence in *Iddir* does not say that the government has the discretion to *refuse* to adjudicate applications for adjustment of status. It merely reiterates what Mr. Kamal has never disputed: the government has the discretion to decide whether or not to grant an application for adjustment of status.

In fact, the Seventh Circuit in *Iddir* went on to conclude that the appellants in that case had a clear right to have their applications for adjustment of status adjudicated and that the government had a duty to adjudicate those applications. *Id*. at 499-500. The government makes much of the fact that the appellants in *Iddir* became eligible for immigrant visas through the diversity visa lottery---a program with its own special statutes and regulations that use mandatory language. *Id*. at 494. However, the government ignores the fact that the appellants in *Iddir* applied for adjustment of status under the same statute at issue in this case: 8 U.S.C. § 1255(a). *Iddir*, 301 F.3d at 494. The non-mandatory terms in this statute did not stop the Seventh Circuit from determining that the government owed the appellants a duty to adjudicate their applications when other statutes and regulations established that such a duty existed. The clear implication is that the non-mandatory language in § 1255(a) that is mentioned by

the Seventh Circuit in *Iddir* and cited by the government in its motion to dismiss refers only to the government's discretion to decide the ultimate outcome of an application for adjustment of status.  The government's argument that the diversity lottery program is distinguishable is incorrect in that it confuses the legal basis for an adjustment of status application with the adjustment itself.  In fact, Mr. Kamal's situation is very similar to that of the appellants in *Iddir*.  An immediate relative of a U.S. citizen is entitled to a mandatory approval of the U.S. citizen's visa petition: "the Attorney General shall, if he determines that the facts stated in the petition are true and that the alien in behalf of whom the petition is made is an immediate relative specified in section 1151(b) of this title . . . approve the petition . . . ."  8 U.S.C. § 1154(b).  Although the statute under which he is applying for adjustment of status uses non-mandatory language and gives the government the discretion to decide whether his application should be granted, an applicable regulation uses mandatory language to place on the government the additional duty of making a decision of some kind.

The government's position that it has no duty to adjudicate applications for adjustment of status makes little sense.  As at least one district court has said, Congress's decision to allow people to apply for adjustment of status implies that the government has a duty to adjudicate those applications.  *Saleem*, 2007 U.S. Dist. LEXIS 80044, at *17.  Any other conclusion would allow the government to "ignore the law."  *Id.*[2]

---

[2] An application for adjustment of status on Form I-485 currently requires a prospective immigrant to pay filing fees in excess of $1,000.00.  *See* www.uscis.gov/forms.  Having made such a substantial investment in a statutorily mandated program, an applicant has a reasonable expectation of an adjudication by the government.

**B. The government has a non-discretionary duty to adjudicate applications for adjustment of status within a reasonable time.**

The government also argues that the pace of adjudication is discretionary because § 1255(a) provides no specific time limit for adjudication. Defendants' Motion to Dismiss at 5-6. However, the lack of a specific time limit in a statute does not mean that the government can take an unlimited amount of time to perform its obligations. The Administrative Procedure Act specifies that agency action should be completed within a reasonable time. 5 U.S.C. § 555(b). Many district court cases have come to the conclusion that this provision places a duty on the government to adjudicate applications for adjustment of status promptly despite the lack of any specific time limit in § 1255(a). *See, e.g.*, *Khelashvili*, 2007 U.S. Dist. LEXIS 89718, at *7; *Saleem*, 2007 U.S. Dist. LEXIS 80044, at 26-28; *Yaoming Liu*, at 4-5.

Again, although the government can point to cases taking the opposite position, *see, e.g.*, *Kuchumov v. Chertoff*, No. 07-12277, 2007 U.S. Dist. LEXIS 70351, at *9-11 (E.D. Mich. Sept. 24, 2007); *Grinberg v. Swacina*, 478 F. Supp.2d 1350, 1355 (S.D. Fla. 2007), the cases cited by Mr. Kamal come to the more logical result. The APA's "reasonable time" provision would mean little if the only situations in which it could be used are situations where the government has exceeded a specific statutory deadline. *See Saleem*, 2007 U.S. Dist. LEXIS 80044, at *29-30. Furthermore, to determine that the government has the discretion to withhold adjudication of applications for adjustment of status indefinitely would render Mr. Kamal's right to an adjudication of his application meaningless. For this reason, this district court has concluded in several cases that the right to adjudication includes an implicit right to have that adjudication completed within a reasonable time. *Shelfeh v. Dorochoff*, No. 07 C 2015, at 6 (N.D. Ill Nov. 28, 2007);

*Razik v. Perryman*, No. 02 C 5189, 2003 U.S. Dist. LEXIS 13818, at *6-7 (N.D. Ill. Aug. 7, 2003); *Paunescu*, 76 F. Supp.2d at 901; *Agbemaple v. INS*, No. 97 C 8547, 1998 U.S. Dist. LEXIS 7953, at *6 (N.D. Ill. May 18, 1998). As some of these cases point out any other result would be unfair as it would allow "interminable delays" that Congress "could not have intended to authorize." *Shelfeh*, at 6; *Agbemaple*, 1998 U.S. Dist. LEXIS 7953, at *6.

**III. Mr. Kamal has adequately alleged that the government has failed to adjudicate his application within a reasonable time.**

Mr. Kamal's application for adjustment of status had been pending for almost five years at the time he filed his complaint (the government erroneously states in its motion that it had been pending for only 18 months). It has now been almost five and a half years since Mr. Kamal first filed his application. This is certainly long enough to entitle Mr. Kamal to the inference that the government has failed in its duty to adjudicate his application within a reasonable time. *See Khelashvili*, 2007 U.S. Dist. LEXIS 89718, at *10-11 (deciding that five-year delay is unreasonable); *Yufeng Liu*, 2007 U.S. Dist. LEXIS 65687, at *26 (deciding that more than three-year delay is unreasonable and that general assertions of overwork and national security cannot justify such a lengthy delay).

The government argues that the delay in Mr. Kamal's case is reasonable because adjudicating his application before background checks are completed would have "serious national security implications." Defendants' Motion to Dismiss at 10-11. However, it is inappropriate to use vague national security concerns as a justification for dismissing a case. At the motion to dismiss stage, the plaintiff is entitled to have the court construe all the facts in his or her favor. *Moranski v. GMC*, 433 F.3d 537, 539 (7th

Cir. 2005).  Whether the "national security implications" cited by the government are serious enough in this case to make a more than 5-year delay in adjudicating Mr. Kamal's case reasonable is a fact-specific question that the court cannot answer without discovery and further development of the record.  *See Shelfeh*, at 7; *Zaigang Liu*, 2007 U.S. Dist. LEXIS 63683, at *23-26 (denying government's motion to dismiss for failure to state a claim where government's only explanation for delay was that FBI name check was not complete); *Yufeng Liu*, 2007 U.S. Dist. LEXIS 65687, at *26-27 (same).

The government has not explained what national security concerns have caused Mr. Kamal's case to drag on for such a long period of time.  In fact it is not even clear if his background check is still pending.  Mr. Kamal is an engineer for Microsoft and has been a productive member of society since submitting his application for adjustment of status more than five years ago.  One has to question if a background check that takes more than five years to complete really benefits national security.  It seems that a quick resolution of Mr. Kamal's case, including a quick completion of any outstanding background checks, would help rather than hurt national security.

## Conclusion

For the above reasons, Mr. Kamal has adequately alleged that he has a clear right to have his application for adjustment of status adjudicated within a reasonable time, that the government has a non-discretionary duty to see that this happens, and that the government has failed to carry out this duty.  Furthermore, because the government's duty to adjudicate Mr. Kamal's application within a reasonable time is non-discretionary and because Mr. Kamal is challenging the government's inaction as opposed to the

government's action, decision, or judgment, 8 U.S.C. § 1252(a)(2)(B) does not strip the court of jurisdiction over this matter. Therefore, the court should deny the government's motion to dismiss for lack of jurisdiction and failure to state a claim.

Respectfully submitted,


_____s/ Scott D. Pollock_____
Scott D. Pollock
Scott D. Pollock and Associates, P.C.
105 W. Madison St., Suite 2200
Chicago, IL 60602
(312) 444-1940

Date: January 11, 2008

<u>CERTIFICATE OF SERVICE</u>

The undersigned attorney for plaintiff Amer Kamal hereby certifies that he caused a copy of the following document:

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

to be served to the district court's ECF system as to ECF filers, on January 11, 2008.


_____s/  Scott D. Pollock_____
Attorney for Amer Kamal

Scott D. Pollock
Scott D. Pollock and Associates, P.C.
105 W. Madison St., Suite 2200
Chicago, IL 60602
(312) 444-1940