# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

AMER FAROUQ ADIB KAMAL,               )
                                      )
    Plaintiff,    )
                                      )
    v.             )    No. 07 C 4840
                                      )
ALBERTO R. GONZALES, et al.           )
                                      )
    Defendants.    )

## MEMORANDUM ORDER AND OPINION

MARVIN E. ASPEN, District Judge:

Plaintiff Amer Kamal ("Kamal") filed a complaint seeking to compel Defendants Michael Mukasey, Attorney General of the United States; Michael Chertoff, Secretary of the Department of Homeland Security; Emilio Gonzales, Director of the United States Bureau of Citizenship and Immigration Services ("USCIS"); Ruth Dorochoff, Chicago District Director of the USCIS; and Robert Mueller, Director of the Federal Bureau of Investigation ("FBI") (collectively, the "Defendants"), "to complete the processing of [his] properly filed and approvable application for adjustment of status based on his 2002 marriage to a United States citizen." (Compl. at 1). Kamal seeks mandamus relief under 28 U.S.C. § 1361, and relief under 5 U.S.C. § 551 *et seq.*, the Administrative Procedure Act ("APA"). (*Id.* ¶ 1). Presently before us is Defendants' motion to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim. For the reasons set forth below, we deny Defendants' motion to dismiss.

# BACKGROUND

Kamal, a national and citizen of Jordan, entered the United States in 2000 as an international student. (*Id.* ¶ 4). In 2002, Kamal received a Master's degree from the University of Idaho, and in May of that year, married Lynn Anne Kamal, a U.S. citizen. (*Id.* ¶¶ 4, 10). Shortly thereafter, on August 6, 2002, Kamal applied for legal permanent resident status based on his marriage to a U.S. citizen with the Immigration and Naturalization Service ("INS").[1] (*Id.* ¶ 10). In December 2002, Kamal and his wife were interviewed for the first time regarding Kamal's "adjustment of status" application and "were told that they could expect to receive [his] permanent resident status and 'green card' within six months." (*Id.* ¶ 10).

Approximately seven months later, in July 2003, Kamal inquired with the USCIS regarding his case and was told that his application was pending an FBI background check. (*Id.* ¶ 12). In February 2004, the Kamals moved to Columbus, Ohio from Spokane, Washington, and on August 2, 2004, both were re-interviewed on Kamal's adjustment of status application in Columbus. (*Id.* ¶¶ 13-14). At that time, USCIS again informed Kamal that the FBI background check was still pending, but that he could expect approval of the application and his green card within one year. (*Id.* ¶ 14). Since this second interview, Kamal has regularly inquired on the status of his application with the USCIS: in February 2005, every four to six weeks between April 2005 and January 2006, in July 2006, in September 2006, and in June 2007. (*Id.* ¶¶ 16, 18, 20, 22, 25). Each time, USCIS has told Kamal that his application was still pending the background check. (*Id.* ¶¶ 16, 18, 20, 22).

---

[1] Section 451 of the Homeland Security Act of 2002 established the Bureau of Citizenship and Immigration Services and transferred INS authority over the adjudication of immigrant visa petitions, among other functions, to that new body. 6 U.S.C. § 271(a)-(b). Section 471 of the Act ordered the abolition of the INS upon all completed transfers of authority, personnel, infrastructure and other resources to the USCIS. 6 U.S.C. § 291(a).

In addition to inquiring with the USCIS directly, Kamal has requested assistance from several members of Congress regarding his application. While residing in Ohio, Kamal corresponded with aides from the Office of Congresswoman Deborah Price in April 2005 and the Office of Senator George Voinavich in October 2006. (*Id.* ¶¶ 17, 23). After Kamal relocated to Chicago, Illinois in May 2007, he again reached out to his Congressional representatives, Senator Barack Obama and Congresswoman Jan Schakowsky. (*Id.* ¶ 28).

While Kamal has been employed since 2002 with various companies, and currently with Microsoft, he has had to re-apply for an employment authorization annually because of his alien status. (*Id.* ¶¶ 12, 13, 15, 19, 24). Though USCIS granted these employment authorizations between 2003 and 2007, delays in processing the renewal in both 2004 and 2007 required Kamal's employers to place him on an unpaid leave of absence in each instance. (*Id.* ¶¶ 15, 25, 27). In addition to applying for annual employment authorizations, Kamal has complied with other USCIS requirements, including providing fingerprints on at least three separate occasions. (*Id.* ¶¶ 13, 20, 24). Indeed, USCIS has had to re-fingerprint Kamal twice because, given the delay in processing Kamal's application, each preceding set expired. (*Id.* ¶¶ 20, 24).

On August 28, 2007, more than five years after initially filing his adjustment of status application, Kamal brought a claim seeking to compel Defendants to adjudicate that application under the Mandamus Act, 28 U.S.C. § 1361, and the APA, 5 U.S.C. § 551 *et seq.* Kamal alleges that the Defendants' failure to process and adjudicate his application has created "ongoing hardships," including having to reapply for extensions of employment authorization, having to pay filing fees repeatedly, and "being deprived of the benefits of lawful permanent resident status." (*Id.* ¶ 29).

## STANDARD OF REVIEW

The purpose of a motion to dismiss under either Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6) is to test the sufficiency of the complaint, not to decide the merits of the case. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). Rule 12(b)(1) requires dismissal of claims over which the federal court lacks subject matter jurisdiction. Jurisdiction is the "power to decide," and must be conferred upon the federal courts. *In re Chi., Rock Island & Pacific R.R. Co.*, 794 F.2d 1182, 1188 (7th Cir. 1986). The plaintiff faced with a 12(b)(1) motion to dismiss bears the burden of proving that the jurisdictional requirements have been met. *Kontos v. U.S. Dep't. of Labor*, 826 F.2d 573, 576 (7th Cir. 1987).

A court may grant a motion to dismiss under Rule 12(b)(6) only if a complaint lacks "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007); *see Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618-19 (7th Cir. 2007); *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776-77 (7th Cir. 2007). A sufficient complaint need not give "detailed factual allegations," but it must provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 127 S. Ct. at 1964-65 (2007); *Killingsworth*, 507 F.3d at 618-19. These requirements ensure that the defendant receives "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 127 S. Ct. at 1964 (*quoting Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 102 (1957)); *see also* Fed. R. Civ. P. 8(a). In evaluating a motion to dismiss, we must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Thompson v. Ill. Dep't. of Prof'l Reg.*, 300 F.3d 750, 753 (7th Cir. 2002).

## ANALYSIS

Kamal argues that we have mandamus jurisdiction over his claim pursuant to 28 U.S.C. § 1361, and jurisdiction under § 706 of the APA, which authorizes a reviewing court to "compel agency action unlawfully withheld or unreasonably delayed." Defendants have filed a Rule 12(b)(1) motion to dismiss Kamal's complaint for lack of subject matter jurisdiction and, alternatively, a Rule 12(b)(6) motion to dismiss. We will first address the issue of whether we have jurisdiction to review Defendants' failure to process adjustment of status applications before moving on to the sufficiency of Kamal's complaint.

## A.       12(b)(1) Motion to Dismiss

Section 245 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1255(a), grants the Attorney General the authority, "in his discretion and under such regulations as he may prescribe," to adjust a petitioner's status to that of legal permanent resident. The INA also details provisions regarding judicial review of such discretionary decisions in 8 U.S.C. § 1252(a)(B). That section states that "[n]otwithstanding any other provision of law (statutory or nonstatutory)… no court shall have jurisdiction to review…(ii) any other *decision* or *action* of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be *in the discretion* of the Attorney General or the Secretary of Homeland Security." 8 U.S.C. § 1252(a)(2)(B)(ii) (emphasis added).

Defendants argue that we lack jurisdiction over Kamal's claim because "Congress granted USCIS, through the Attorney General and the Homeland Security Secretary, the discretion to adjudicate adjustment of status petitions," which "includes the timing, the method, and information needed for adjudication." (Mot. at 3). It appears that no federal circuit court has decided whether the delayed timing, or pace, of adjudicating adjustment of status applications falls under the scope

of discretionary power – thus precluding it from judicial review under § 1252(a)(B)(ii) – and district courts around the country are split on the matter.

However, we find that the issue in this present claim is broader than the Defendants have framed it. The question at issue is not whether § 1252(a)(2)(B)(ii) bars judicial review over challenges to the *pace* of application processing, but rather whether the provision precludes review over challenges to the *failure to adjudicate* an application. *See Khelashvili v. Chertoff*, No. 07 C 2826, 2007 WL 4293634, at *2 (N.D. Ill. Dec. 7, 2007) ("[I]t is undisputed that the decision whether to grant or deny an application for adjustment of status is discretionary. The [question] is whether the *adjudication* of those applications is also discretionary."). We agree that we neither have the power to adjust a petitioner's legal permanent resident status, nor to review decisions where the USCIS has denied or granted a petitioner's application for such status. *See, e.g.*, *Yong Tang v. Chertoff*, 493 F. Supp. 2d 148, 151 (D. Mass. 2007) ("The ultimate decision whether or not to adjust an alien's status under INA § 245 is indisputably within the discretion of the Attorney General."). But we perceive a key distinction between how the Attorney General processes an application and whether he adjudicates the application at all. *Singh v. Still*, 470 F. Supp. 2d 1064, 1067 (N.D. Cal. 2007) ("[T]here is a difference between the INS's discretion over *how* to resolve an application and the INS's discretion over *whether* it resolves an application.").

On this latter issue, the Seventh Circuit has already provided controlling language in *Iddir v. INS*, 301 F.3d 492 (7th Cir. 2002). In *Iddir*, plaintiffs were foreign nationals who were eligible to apply for immigrant visas and eventually, legal permanent resident status, under the Diversity Visa Lottery Program, but whose applications were denied because the INS failed to process their applications within the statutorily mandated one-year timeframe. *Id.* at 493-94. Although the

Seventh Circuit found that the district court lacked jurisdiction to hear the plaintiffs' mandamus claims, it held as a threshold matter that the district courts did have jurisdiction to review the claim under § 1252(a)(2)(B).[2]  *Id.* at 498, 501.  The court concluded that § 1252(a)(2)(B), "by use of the terms 'judgment' and 'decision or action', only bars review of *actual discretionary decisions to grant or deny relief* under the enumerated sections, including section 1255."  *Id.* at 497 (emphasis added);[3]  *see also Ahmed v. Dep't of Homeland Security*, 328 F.3d 383, 387 (7th Cir. 2003) (reiterating *Iddir*'s holding "that 8 U.S.C. §1252(a)(2)(B) . . . applies only if there has been an actual discretionary decision either to grant or to deny the visa.").

Kamal is neither asking this court to review a discretionary "judgment, decision, or action on his application," nor does he object to the use of background checks by the USCIS.  (Resp. to Mot. at 5).  Rather, Kamal seeks "to compel the government to make a judgment or decision in the first instance," and challenges the Defendants' failure to render any decision on his case.  (*Id.* at 3).  Because the Defendants have not made an "actual discretionary decision" to either grant or deny

---

[2]  The Seventh Circuit held that the plaintiffs had no claim for mandamus relief because of the statutory one-year deadline for adjustment of status applications under the Diversity Visa Lottery Program.  Because the statutory period had passed, the Court found that INS could not "award the relief sought by the plaintiffs," and as a result, one of the required elements for mandamus relief in the case – "the clear duty to adjudicate the petitions" – could not be met.  *Id.* at 500-01.

[3]  The Seventh Circuit used several tools of statutory construction to arrive at its interpretation of § 1252(a)(2)(B), including the following principles:  (1) "congressional intent to limit federal jurisdiction, generally, must be clear and as convincing in order to preclude judicial review;"  (2) "there is a general presumption in favor of judicial review of administrative acts;"  and (3) courts "ordinarily resolve ambiguities in favor of the aliens and find jurisdiction to hear the grievance."  *Id.* at 496-97.  The Court also noted that the title of subsection § 1252(a)(2)(B), "Denials of discretionary relief," indicated that "Congress sought only to preclude review of orders or judgments, pertaining to actual discretionary decisions."  *Id.* at 497.

Kamal legal permanent resident status, the language in *Iddir* leads us to conclude that § 1252(a)(2)(B) does not apply in this case.[4]

Defendants rely heavily on the reasoning in *Sadafi v. Howard*, 466 F. Supp. 2d 696 (E.D. Va. 2006), in arguing that the pace of adjudicating adjustment of status claims falls within the definition of a discretionary "action" under § 1252(a)(2)(B) and is thus insulated from judicial review.[5]

In *Sadafi*, the court looked to the plain dictionary meaning of the word "action" to determine whether it "encompasses the pace at which USCIS processes an adjustment of status application." 466 F. Supp. 2d at 698. The court held because "action" means "'an act or series of acts,'" the term indeed "encompasses *any* act or series of acts that is discretionary within the adjustment of status process . . . , including the completion of background and security checks and the pace at which the process proceeds." *Id.* at 699. In other words, the court reasoned that because the pace of adjudication is part of the "ongoing adjudication process" that comprises "action" on the part of the USCIS, § 1252(a)(2)(B) barred judicial review. *Id.* at 699-700.

---

[4] *See also Camerena,* 2008 WL 161481, at *4 (citing *Iddir*'s proposition that § 1252(a)(2)(B) only bars review of actual discretionary decisions); *He v. Chertoff,* --- F. Supp. 2d ----, No. 07 C 363, 2008 WL 36634, at *5 (N.D. Ill. Jan. 2, 2008) ("[In *Iddir*,] the Seventh Circuit upheld the district court's jurisdiction to hear the case because the applicant's claim arose from agency *in*action, not a discretionary decision or other affirmative act. This holding setting out the scope of section § 1252(a)(2)(B) is the controlling law in this Circuit."); *Saleem v. Keisler,* --- F. Supp. 2d ----, No. 06-C-712-C, 2007 WL 3132233, at *3 (W.D. Wis. Oct. 26, 2007) (citing *Iddir* to hold that § 1252(a)(2)(B) does not apply, and that district court jurisdiction exists "[b]ecause plaintiff's claim is premised on defendants' *refusal* to make a 'decision' or to take 'action' on his application").

[5] *See also Sharif,* 497 F. Supp. 2d at 928; *Bugulu v. Gonzales,* 490 F. Supp. 2d 965 (W.D. Wis. 2007); *Grinberg v. Swacina,* 478 F. Supp. 2d 1350 (S.D. Fla. 2007); *Abanov v. Gonzales,* No. H-06-3725, 2007 WL 2872765 (S.D. Tex. Sept. 28, 2007); *Kuchumov v. Chertoff,* No. 07-12277, 2007 WL 2782045 (E.D. Mich. Sept. 24, 2007); *Serrano v. Quarantillo,* No. 06-5221, 2007 WL 1101434 (D.N.J. Apr. 9, 2007).

However, there are several problems with the Defendants' reliance on this line of reasoning. First, we again distinguish Kamal's claim, where he is alleging a wholesale failure to decide a case, with a hypothetical claim where a plaintiff challenges the various regulations and components of the adjudicatory process. *See, e.g., Saleem,* --- F. Supp. 2d ----, 2007 WL 3132233, at *4 ("[N]o matter how narrowly a court defines 'action,' it would require an Orwellian twisting of the word to conclude that it means a failure to adjudicate."); *Paunescu v. INS*, 76 F. Supp. 2d 896, 900-01 (N.D. Ill. 1999) (noting that "the failure to adjudicate an application is different from the denial of an application" in a case where plaintiffs sought the court not to "'review' a governmental action, but to examine and rectify a gross inaction"). Indeed, as other district courts have noted, *Sadafi*'s holding would effectively, and illogically, mean that "inaction" is tantamount to "action." *See, e.g.*, *Liu v. Novak*, 509 F. Supp. 2d 1, 7 (D.D.C. 2007) ("[T]he argument in *Sadafi* essentially finds that inaction is within the 'plain meaning' of action. The established body of administrative law though, distinguishes between the two.").

Second, we observe that the *Sadafi* court left the door open as to whether district courts would have jurisdiction in a case "where USCIS refused altogether to process an adjustment application or where the delay was so unreasonable as to be tantamount to a refusal to process the application." 466 F. Supp. at 700. The *Sadafi* court itself thus recognized that district courts may, in some instances, have jurisdiction in cases where the USCIS's processing of applications is unreasonable. *See, e.g.*, *Aslam v. Mukasey*, --- F. Supp. 2d ----, No. 1:07cv331, 2008 WL 220708 (E.D. Va. Jan. 25, 2008) ("The very inclusion of this disclaimer [in *Sadafi*] undermines [its] central conclusion that the INA imposes an absolute jurisdictional bar to a federal court's consideration of the pace of the government's adjudication."); *Qiu v. Chertoff*, No. C07-0578, 2007 WL 1831130,

at \*2 (N.D. Cal. June 25, 2007) ("[*Sadafi* and other similar decisions are] internally inconsistent in that they conclude that courts do not have jurisdiction to review the reasonableness of the pace of [adjustment of status applications] as long as the agency is 'making reasonable efforts,' thereby implying that a court does have some authority to review the reasonableness of the agency's efforts.").

Last, the Defendants point to the argument in *Sadafi* that the pace of adjudication falls under the discretion of USCIS because "Congress included no statutory time limits in § 1255(a), nor expressed any need for 'expedition' in the adjudication process." (Mot. at 5-6); *see also Kuchumov*, 2007 WL 2782045, at \*3 (declining to find jurisdiction because unlike in other sections of the INA, Congress did not in § 1255(a) "set forth a statutory time period for adjudication and an explicit provision granting [adjustment of status] applicants a right to judicial review upon the expiration of that time period"). The absence of such time limits, the Defendants contend, confirms "Congress' intent that…the pace of decision-making[] be within the discretion of USCIS, and thus excluded from judicial review." (Mot. at 6). However, in order to preclude judicial review, "congressional intent to limit federal jurisdiction, generally, must be clear and convincing." *Iddir*, 301 F. 3d at 496. The absence of a statutory time limit, without more, is insufficient to suggest that Congress intended to preclude judicial review over challenges to the adjudication of adjustment of status applications. *See, e.g., Saleem,* --- F. Supp. 2d ----, 2007 WL 3132233, at \*4 ("[I]t is inappropriate to infer a congressional intent to remove jurisdiction simply from the absence of a statutory deadline for making a decision.").

Therefore, for the reasons set forth above, we find that we have jurisdiction to hear Kamal's claim.

**B.      12(b)(6) Motion to Dismiss**

As we have jurisdiction to review Kamal's claim, we now assess Defendants' Rule 12(b)(6) motion. Kamal asks us to compel Defendants to adjudicate his adjustment of status application under the Mandamus Act, 8 U.S.C. § 1361. Alternatively, Kamal seeks relief under § 706(1) of the APA, which authorizes a reviewing court to compel "unreasonably delayed" agency action.

**1.      Claim for Mandamus Relief Under 8 U.S.C. § 1361**

We first address Kamal's claim for mandamus. District courts have original jurisdiction in the nature of mandamus over any action which seeks "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. However, the Supreme Court consistently cautions that "[a] judicial readiness to issue the writ of mandamus in anything less than an extraordinary situation would run the real risk of defeating the very policies sought to be furthered by that judgment of Congress." *Kerr v. U.S. Dist. Ct. N. Dist. Cal.*, 426 U.S. 394, 403, 96 S. Ct. 2119, 2124 (1976). Consequently, courts grant mandamus relief only where the plaintiff demonstrates: "(1) a clear right to the relief sought; (2) that the defendant has a duty to do the act in question; and (3) no other adequate remedy is available." *Iddir*, 301 F.3d at 499.

Defendants contend that Kamal's mandamus claim should be dismissed because since "the ultimate decision regarding the adjustment of status [is] a discretionary one," Kamal neither has a clear right to adjudication of his application within a reasonable time, nor does the USCIC have a duty to adjudicate his application. (Mot. at 7). But Defendants again fail to note the distinction between whether USCIS uses its discretionary power to either adjust or not adjust a petitioner's status, and whether it adjudicates an application and renders a decision at all. *See, e.g., Liu v.*

*Chertoff*, No. 07 C 388, at *4 (N.D. Ill. Oct. 5, 2007) ("Defendants . . . confuse the duty to grant the [adjustment of status] applications with the duty to adjudicate them."); *Razik v. Perryman*, No. 02 C 5189, 2003 WL 21878726, at *2 (N.D. Ill. Aug. 7, 2003) (noting the distinction between "a duty *to grant* . . . applications for status with the duty *to adjudicate* those applications"); *Yu v. Brown*, 36 F. Supp. 2d 922, 931 (D.N.M. 1999) ("The fact that INS has discretion in the ultimate decision whether to grant LPR status is simply irrelevant to the question of whether it has discretion to refuse to act on Plaintiffs' application."). Kamal is not asking us to compel the USCIS to grant his application, but is rather seeking to compel USCIS to make a decision one way or another. (Resp. to Mot. at 3).

We agree with other judges in this district and elsewhere that the USCIS has a non-discretionary duty to process Kamal's adjustment of status application and, accordingly, that Kamal has a clear right to have his application adjudicated.[6]

Language in the applicable regulations indicates that USCIS has a non-discretionary duty to process and make a decision on a petitioner's adjustment of status application. 8 C.F.R. § 242.2(a)(5) ("[T]he application *shall* be notified of the decision of the director, and if the application

---

[6]  As one court noted, the USCIS has a "nondiscretionary duty to process [a petitioner's] application: they cannot decide not to process an application…[for such] a decision would not be an exercise of discretion, but a refusal to perform assigned duties." *Liu v. Chertoff*, No. 06-3297, 2007 WL 1202961, at *3 (C.D. Ill. Apr. 23, 2007); *see also Camerena*, 2008 WL 161481, at *3 ("[USCIS] has a nondiscretionary duty to adjudicate applications for adjustment of status within a reasonable time."); *He,* --- F. Supp. 2d ----, 2008 WL 36634, at * 3 ("[Adjustment of status] applicants have a clear right to adjudication of their cases within a reasonable time."); *Khelashvili*, 2007 WL 4293634, at *3 ("[T]he obligation to process [adjustment of status] applications is not discretionary and must be done within a reasonable time."); *Razik*, 2003 WL 21878726, at *2 ("Courts have consistently held that [§ 1255(a)]…imposes a duty upon the Attorney General to adjudicate cases within a reasonable time."). Two additional unpublished cases from the Northern District of Illinois reach the same conclusion. *See Shelfeh v. Dorochoff*, No. 07 C 2015, slip op. at 7 (N.D. Ill. Nov. 28, 2007); *Liu v. Chertoff*, No. 07 C 388, slip op. at 4 (N.D. Ill. Oct. 5, 2007).

is denied, the reasons for the denial.") (emphasis added); 8 C.F.R. § 245.6 ("Each application for adjustment of status under this part *shall* be interviewed by an immigration officer.") (emphasis added); *id.* ("[T]he director *shall* record the alien's admission for lawful permanent residence.") (emphasis added); *see also Saleem*, --- F. Supp. 2d ---, 2007 WL 3132233, at *6 (finding that these "regulations are drafted on the assumption that defendants *will* decide each application"); *Singh,* 470 F. Supp. 2d at 1067 (noting that 8 C.F.R. § 242.2(a)(5) indicates a non-discretionary duty to process applications). Moreover, the Defendants' duty to adjudicate Kamal's petition for permanent residence can be implied from Congress authorizing Kamal to submit an application in the first place. *Saleem,* --- F. Supp. 2d ---, 2007 WL 3132233, at *6. As the *Saleem* court noted, "a right to request relief inherently implies a corresponding obligation to respond." *Id.*[7]

As to the third element necessary to state a claim for mandamus, the Defendants have conceded that Kamal has no other adequate remedy available to him. According to his complaint,

---

[7] Defendants' argument that USCIS's merely possesses a discretionary duty to adjudicate applications is also unpersuasive when viewed through a policy lens. To find that the USCIS has complete discretion in setting the pace of processing and adjudicating adjustment of status applications, out of the reach of judicial review, would mean that the USCIS could potentially hold up a petitioner's application for years, if not indefinitely. Petitioners like Kamal, whose application has been pending now for over five years, would be without recourse to seek mandamus or other relief in a court of law. *See, e.g., Aslam*, --- F. Supp. 2d ----, 2008 WL 220708, at *4 ("If the pace of the [Homeland Security] Secretary's decision were immune from judicial review, the Executive Branch could unilaterally impose a *de facto* moratorium on all adjustment of status applications simply by delaying a final decisions."); *Lindems v. Mukasey*, --- F. Supp. 2d ----, No. 07C0476, 2008 WL 171078, *2 (E.D. Wis. Jan. 16, 2008) ("I reject the argument that defendants have unfettered discretion to delay making a decision. If this were true, defendants could delay a decision indefinitely and thus render meaningless the right to apply for adjustment of status."); *Kim v. Ashcroft*, 340 F. Supp. 2d 384, 393 (S.D.N.Y. 2004) ("[T]he CIS simply does not possess unfettered discretion to relegate aliens to a state of 'limbo,' leaving them to languish there indefinitely."). Considering such policy consequences in conjunction with the mandatory language in the applicable federal regulations, we find that USCIS has a duty to adjudicate adjustment of status applications, and that applicants like Kamal have a clear right to have such applications adjudicated.

Kamal has made regular inquiries with the USCIS, met personally with USCIS officers, and sought assistance from multiple members of Congress to encourage Defendants to process and decide on his application. (Compl. ¶¶ 16-18, 20, 22-23, 25, 28). Kamal's efforts have not succeeded and he is now without any other available remedy but mandamus relief. As a result, Kamal has pled sufficient facts to support each element of his mandamus claim.

### 2. Claim for Relief Under the APA

Kamal's alternative claim for relief arises under the APA. He alleges that the Defendants have violated § 555(b) of the APA, which states that "within a reasonable time, each agency shall proceed to conclude a matter presented to it," and that we have jurisdiction to review this failure to adjudicate his application under § 706(1) of the APA, which authorizes a reviewing court to "compel agency action unlawfully withheld or unreasonably delayed."

As with their argument regarding Kamal's mandamus claim, Defendants contend that the decision whether to adjust Kamal's status is a discretionary one. First, Defendants argue that Kamal has no claim under the APA because § 1252(a)(2)(B) bars judicial review over challenges to the pace of adjustment of status applications "[n]otwithstanding any other provision of law (statutory or nonstatutory)." Second, Defendants contend that we have no jurisdiction to review Kamal's case because "review is unavailable where, as here, the action challenged is 'committed to agency discretion by law' [under § 701(a) of the APA]." (Mot. at 11).

As to Defendants' first argument, we have already determined that under controlling Seventh Circuit law, § 1252(a)(2)(B) does not apply in cases where, as here, the USCIS has not yet made an actual discretionary decision whether to adjust an applicant's status. Defendants' second jurisdictional argument fails for the same reasons that their argument against mandamus relief fails:

-14-

the agency in question here, the USCIS, has a *non-discretionary* duty to adjudicate plaintiff's claim.

While the USCIS (by way of the Attorney General) has the discretion to set regulations regarding

the adjustment of status process and, ultimately, the discretion whether to grant a petitioner legal

permanent residence, it has a non-discretionary duty to make a decision of some kind on Kamal's

application.

The remaining question, therefore, is whether Kamal has sufficiently pled facts to show that

Defendants have failed to proceed on his application "within a reasonable time." 5 U.S.C. § 555(b).

Contrary to what the Defendants claim, Kamal alleges that his application had been pending for *five*

*years*, not eighteen months, when he filed this claim in August 2007. (Compl. at 1, ¶ 10); (Mot. at

9). Based on the complaint, Kamal has therefore been waiting approximately 66 months for USCIS

to resolve his petition. At this juncture, we need not determine whether USCIS's more than five-

year long delay in processing Kamal's application is reasonable.[8] In light of the Rule 12(b)(6)

standard, we hold that Kamal has sufficiently plead facts to support his claim that USCIS's delay

is unreasonable. *See Thompson*, 300 F. 3d at 753.

The Defendants argue that this delay is reasonable because the extra time is necessary to

conduct background checks of non-citizens pursuant to national security interests. (Mot. at 10-11).

This argument is not persuasive because it urges us to refrain from ordering adjudication of Kamal's

claim before his background checks have been completed. (Mot. at 11). Kamal is not challenging

---

[8] In summary judgment proceedings, other courts have found shorter delays to be unreasonable. *See, e.g., Aslam*, --- F. Supp. 2d ----, 2008 WL 220708, at *5 (three-year delay is unreasonable); *Saleem*, --- F. Supp. 2d ---, 2007 WL 3132233, at *6 (five years to conduct three background checks is unreasonable); *Liu,* 509 F. Supp. 2d at 10 (four-year delay is unreasonable); *Yufeng Liu v. Chertoff*, No. CV-06-1682-ST, 2007 WL 2435157, at *10-11 (D.Or. Aug. 29, 2007) (three-year delay is unreasonable); *Singh*, 470 F. Supp. 2d at 1065, 1071 (four-year delay is unreasonable).

the background checks – indeed, he has willingly supplied fingerprint and other biometric data on no less than three different occasions since August 2002 – but rather is challenging USCIS's failure altogether to decide on his application. Accordingly, on the record before us, a five-year delay in processing and adjudicating Kamal's adjustment of status application is unreasonable. *See, e.g., Singh*, 470 F. Supp. 2d at 1069 ("[T]he mere invocation of national security is not enough to render agency delay reasonable per se.").

## CONCLUSION

For the reasons discussed above, we deny Defendants' motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim. It is so ordered.

MARVIN E. ASPEN
United States District Judge

Date: March 3, 2008